# EXHIBIT A

Louis E. Granata, Esq.
Granata & Zaccardi
210 Main Street
P.O. Box 389
Matawan, New Jersey 07747
(732) 583-3636
Attorneys for Plaintiff,
Old Bridge Municipal Utilities Authority

FILED & RECEIVED #1
2012 AUG 29 A 9:33
CIVIL OFFICE
MIDDLESEX VICINAGE

| | |
|---|---|
| OLD BRIDGE MUNICIPAL UTILITIES AUTHORITY, a political subdivision of the State of New Jersey,<br><br>Plaintiff,<br><br>v.<br><br>WESTCHESTER FIRE INSURANCE COMPANY, ACE WESTCHESTER SPECIALTY GROUP, and Fictitious Corporations 1 through 10,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MIDDLESEX COUNTY<br><br>Docket No.: L 5952-12<br><br>Civil Action<br><br>COMPLAINT |

Plaintiff, the Old Bridge Municipal Utilities Authority ("Plaintiff" or "Authority"), a political subdivision of the State of New Jersey, with offices at 71 Boulevard West, Cliffwood Beach, New Jersey 07735, complaining of the Defendants, says:

### FIRST COUNT

### (Breach of Contract – Insurance Policy)

1. Plaintiff is a municipal utilities authority and an independent political subdivision of the State of New Jersey, organized and operating under the New Jersey Municipal Utilities Authority Law, *N.J.S.A.* 40:14B-1 *et seq.* ("MUA Law").

2. In that capacity, it is responsible for providing drinking water to, and for removing wastewater from, the Township of Old Bridge, Middlesex County, New Jersey.

3. Defendant Westchester Fire Insurance Company ("WFIC") is an insurance company duly authorized to do business in New Jersey, with a corporate mailing address, according to its website, of P.O. Box 1000, 436 Walnut Street, Routing WB04H, Philadelphia, Pennsylvania.

4. Defendant ACE Westchester Specialty Group ("ACE" and together with WFIC, "Defendants") is on information and belief an affiliate or parent of WFIC, and also maintains offices at 436 Walnut Street, Routing WB04H, Philadelphia, Pennsylvania. ACE also maintains a claims office located at 11575 Great Oaks Parkway, Suite 200, Alpharetta, Georgia 30022.

5. Fictitious Corporations 1 through 10 have been identified as defendants in the event that further investigation and discovery reveal the existence of any additional affiliates of Defendants which may have issued the insurance policy which is the subject of this action.

6. Defendants insured the Authority under a "Municipal Advantage Public Entity Liability Policy" bearing Policy No. G24098369 001 (the "Policy"), which was issued by WFIC to the Authority, for an effective period of November 8, 2009 to November 8, 2010.

7. On or about September 29, 2010, the Authority was sued in the United States District Court for the District of New Jersey, in a matter captioned *Brunetti, et al. v. Old Bridge Municipal Utilities Authority, et al.*, Case No. 10-cv-05018 (the "Federal Action") (the Plaintiffs in that action will be referred to as "Brunetti").

8. Notably, in addition to bringing suit against the Authority, the Federal Action also named as individual defendants the Commissioners of the Authority, its Executive Director, its Staff Engineer, and Professional Consultants of the Authority (collectively the "D&O Defendants"), in their individual capacities, alleging a violation of the Brunetti Plaintiffs federally protected civil rights (42 U.S.C. §§1983 and 1985 and the Federal Racketeering Influence and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(c).

2

9. Plaintiff, through its insurance agents, submitted a claim to Defendants on or about October 2010, seeking a defense of the Federal Action under the Policy.

10. Plaintiff complied with all the requirements of the Defendants' insurance policy as set forth in its claim procedure, and expected to be covered under the Policy in connection with the defense of the Federal Action.

11. By correspondence dated October 26, 2010 and November 2, 2010 respectively, Defendants agreed to furnish the Authority and the D&O Defendants with a defense of the Federal Action, subject to a reservation of rights to deny or limit coverage upon further investigation.

12. Defense counsel was subsequently assigned by Defendants to defendant the Authority and the D&O Defendants against the Federal Action.

13. As a result of successful motion practice in the Federal Action by defense counsel, the Federal Action was dismissed.

14. Following that dismissal, Brunetti filed their Complaint in the Superior Court of New Jersey, Middlesex County, on June 13, 2011 captioned *Brunetti, et al v. Old Bridge Municipal Utilities Authority, et al.* Docket No. MID-L-4383-11 (the "2011 State Action") alleging violations of both the Federal RICO statute and N.J.S.A. 2C:41-1 et seq. the News Jersey RICO statue naming the Authority and the D & O Defendants again.

15. Defendants continued to provide the Authority and the D&O Defendants with a defense under the Policy in the 2011 State Action, utilizing defense counsel assigned to defend in the Federal Action for that purpose.

16. By letter dated July 24, 2012 however, Defendants notified Plaintiff that upon further review of the matter, they were denying coverage to the Authority and the D&O Defendants under

the Policy, and withdrawing their defense of the 2011 State Action in 30 days. Attached hereto as Exhibit "A" is that letter dated July 24, 2012.

17. The July 24, 2012 letter of Defendants provided the basis for the denial of coverage and withdrawal of the defense.

18. The primary basis for the denial of coverage and withdrawal of the defense was Defendants' belief that the Federal Action and the 2011 State Action arose from "Interrelated Wrongful Acts" that were also alleged in an earlier, Second Supplemental Complaint filed in the Superior Court of New Jersey, Middlesex County on February 27, 2009, outside the Policy period, and captioned *Oaks Development Corp. et al. v. Planning Board of the Township of Old Bridge, et al.*, Docket No. MID-L-1902-05 (the "2009 State Action" and together with the Federal Action and the 2011 State Action, collectively the "Actions").

19. Notably however, the D&O Defendants are not parties to the 2009 State Action, and are subject to unique RICO allegations against only them in both the Federal Action, and the 2011 State Action.

20. Similarly, the plaintiffs in the 2009 State Action are different from those plaintiffs set forth in both the Federal Action and the 2011 State Action.

21. Nonetheless, Defendants maintain that the allegations of the 2009 State Action are similar in many respects to those of the Federal Action and the 2011 State Action, and that the 3 actions are therefore 'interrelated' under the Policy for coverage purposes.

22. According to Defendants, since the 3 actions are interrelated with a common nexus, and the 2009 State Action was filed outside the Policy coverage period on February 27, 2009, all of the Actions were therefore "first made" outside of the Policy coverage period. Policy, Section VIII.B.2.

4

23. Defendants also maintain that Interrelated Wrongful Acts, such as those alleged to have occurred in all of the Actions and stemming initially from the 2009 State Action, exclude coverage under Section IV of the Policy (Exclusions).

24. Plaintiff submits and maintains that there is a factual dispute over whether the allegations of the Federal Action and the 2011 State Action are in fact "Interrelated Wrongful Acts" with the 2009 State Action under the Policy for coverage exclusion purposes.

25. As indicated, the D&O Defendants are <u>not</u> parties to the earlier 2009 State Action, and are subject to unique RICO allegations against <u>only</u> them in both the Federal Action, and the 2011 State Action.

26. RICO allegations were raised for the first time in the Federal Action in 2010, <u>during</u> the Policy coverage period.

27. And as noted, the plaintiffs in the Federal Action and the 2011 State Action are not the same as the plaintiffs in the 2009 State Action.

28. It is therefore clear that the Federal Action, and the subsequent 2011 State Action, are not "Interrelated Wrongful Acts" with the 2009 State Action for coverage purposes. They arose and were 'first made' during the coverage period and a defense should have been continued under the Policy for the 2011 State Action as a result.

29. There is clearly a factual dispute over whether the Actions are Interrelated Wrongful Acts, and Defendants should have continued to provide a defense to the 2011 State Action as a result.

30. Plaintiff reasonably expected the insurance Policy to cover the defense of the 2011 State Action, and Defendants have wrongfully and willfully denied a continued defense under this coverage, resulting in harm to Plaintiff and a breach of the Policy.

31. As a result of the aforesaid conduct and withdrawal of coverage defense, Plaintiff has been damaged.

WHEREFORE, Plaintiff demands judgment against the Defendants, Westchester Fire Insurance Company and ACE Westchester Specialty Group, jointly and severally, for:

a. Damages.

b. Costs of suit.

c. Legal fees.

d. Such other relief as the Court may grant, including restoration of a defense of the 2011 State Action.

## SECOND COUNT

### (Specific Performance)

1. Plaintiff repeats the allegations of the First Count, and incorporates them herein as if set forth at length.

2. For the reasons set forth above, Defendants have an obligation to provide a continued defense of the 2011 State Action under the Policy to the Authority, and the D&O Defendants.

3. A continued defense is *not* being provided by Defendants, Plaintiff is suffering damages in the form of added attorney's fees and costs in defending the 2011 State Action, which otherwise would have been covered by the Policy - had Defendants continued to provide a defense under its terms.

4. Said costs and damages should have been paid for by the Defendants under the Policy.

5. Defendants have an obligation to specifically perform under the Policy by providing a defense to the Authority and the D&O Defendants in the 2011 State Action, which should be ordered by this Court consistent with the terms and conditions thereof.

WHEREFORE, Plaintiff demands judgment against the Defendants, Westchester Fire Insurance Company and ACE Westchester Specialty Group, jointly and severally, for:

a. Specific Performance of the Policy, and Defendants' obligation to supply a continued defense of the 2011 State Action to the Authority and the D&O Defendants.

b. Damages.

c. Costs of suit.

d. Legal fees.

e. Such other relief as the Court may grant.

## THIRD COUNT

### (Declaratory Relief)

1. Plaintiff repeats all the allegations of the First Count and Second Count, and incorporates them herein by reference as if set forth at length.

2. There is clearly an actual and justiciable controversy between the Parties with respect to the scope of coverage of, and the entitlement to a defense under, the provisions of the Policy as they relate to the provision of a defense in connection with the 2011 State Action.

3. Pursuant to N.J.S.A. 2A:16-50 to 62, the New Jersey Declaratory Judgment Act, the controversy between the Parties over the scope of the Policy is one that requires this Court to declare the scope and intent of coverage in light of the actual dispute over its terms.

WHEREFORE, Plaintiff demands judgment against Defendants, Westchester Fire Insurance Company and ACE Westchester Specialty Group, jointly and severally, for:

a. A declaration from this Court with respect to the rights and obligations of the Parties under the Policy, specifically with regard to Defendants' obligation to provide a continued defense of the 2011 State Action thereunder.

  b. Legal fees and costs of suit.

  c. Such other relief as the Court may grant, including specific performance associated with any such declaration.

Granata &amp; Zaccardi,<br>
Attorneys for Plaintiff

Dated: 8/24/12        By: _____
                  Louis E. Granata, Esq.

## NOTICE OF DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE that Louis E. Granata, Esq. is hereby designated as trial counsel for the Plaintiff, Old Bridge Municipal Utilities Authority.

Dated: 8/24/12

By: _____
Louis E. Granata, Esq.

## RULE 4:5-1 CERTIFICATION

I hereby certify in accordance with New Jersey Civil Practice Rule 4:5-1 that to the best of my knowledge, information and belief the instant matter in controversy is not the subject of any other action pending in any court and is likewise not the subject of any pending arbitration proceeding, nor is any other action or arbitration contemplated. I am not aware of any other parties that should be joined in this action.

Dated: 8/24/12

By: _____
Louis E. Granata, Esq.

# EXHIBIT A

# A

ACE
Claims
Routing 9250
11575 Great Oaks Parkway
Suite 200
Alpharetta, GA 30022
USA
Sara Tucker
*Senior Claims Specialist*

678-795-4060 tel
678-795-4070 fax

sara.tucker@acegroup.com
www.acegroup.com

July 24, 2012

**Via Email/SFlorek@OBMUA.com**

Mr. Steve Florek
Old Bridge Municipal Utilities
P.O. Box 1006
Laurence Harbor, NJ 08879

    Re:    **Public Entity:**    **Old Bridge Municipal Utilities Authority**
            **Claimant:**    John J. Brunetti, Sr. at al.
            **Policy No.:**    G24098369 001
            **Claim No.:**    JY10J0533302

Dear Mr. Florek:

On behalf of Westchester Fire Insurance Company ("WFIC" or "Insurer"), this letter shall supplement, and not replace prior correspondence issued by or on behalf of WFIC regarding this matter, including but not limited to ACE Westchester Specialty Group's ("ACE") prior correspondence of October 26, 2010, and November 2, 2010.

You will recall that WFIC had undertaken to defend the action captioned *Brunetti, et al. v. Old Bridge Municipal Utilities Authority, et al.*, in the U.S. District Court for the District of New Jersey, Case No. 10-cv-05018 ("Federal Action"). As discussed further below, the Federal Action has been dismissed and re-filed in the Superior Court of New Jersey, Middlesex County, Docket No. MID-L-4383-11 ("2011 State Action"). WFIC has included the 2011 State Action in the defense. WFIC's defense of the Federal Action and State Action (collectively "Actions") was pursuant to a reservation of rights to deny coverage and to seek recoupment of Claims Expenses[1].

Based upon further review and investigation of the above-referenced matter, including consideration of the pleadings and other materials submitted to ACE by or on behalf of the Public Entity Old Bridge Municipal Utilities Authority ("OBMUA") and its officers and directors (with OBMUA, collectively, "Insureds"), we are constrained to advise that WFIC has determined that coverage is not afforded for the Actions for the reasons set forth below.

As such, pursuant to said denial of coverage, WFIC shall withdraw from the defense of the Actions effective thirty (30) days (Transitional Period") from the date of this letter and shall no longer pay Claims Expenses[2] incurred after the end of such period.

---

[1] For the sake of brevity, capitalized terms are employed as defined by the Policy.

[2] For the sake of brevity, capitalized and/or emboldened terms are utilized as defined by the Policy.



## CLAIM BACKGROUND

This matter, as initially reported to WFIC, involved the filing of a complaint in the Federal Action. The Federal Action named as defendants the OBMUA, as well as its directors and officers in their official and individual capacities ("D&O Defendants"). The Federal Action alleges generally that the OBMUA is responsible for providing drinking water to, and for removing wastewater from, the municipality of Old Bridge, New Jersey. It is further alleged that the OBMUA plays "a pivotal role in granting . . . approvals necessary for development of private property within Old Bridge."

It is alleged that in or about 1956, the Old Bridge Township (then named Madison Township) granted to the Midtown Water Company ("MWC"), an entity owned by the Brunettis ("Brunettis" or "plaintiffs"), the right to construct and operate a water system for the Brunettis property, which consisted of over 2,300 acres of land within the Old Bridge Township (the "Property"). Thereafter, in 1967, MWC agreed to convey its right to construct and operate the water system, as well as its equipment, to the OBMUA. In exchange, the OBMUA agreed to construct facilities to provide potable water for the construction of the Property at the OBMUA's expense. Moreover, the OBMUA allegedly agreed that the Brunettis would not be responsible to pay water connection and inspection fees for the Property. The Federal Action complaint also refers to 1984 and 1986 Agreements between the OBMUA and MWC, and without describing either agreement and without further elaboration, concludes that the consequences of the 1986 Agreement "[are] in dispute."

The Federal Action principally alleges that the OBMUA has refused to provide water to the Property, except in exchange for major improvements to the OBMUA's "system," which expenses therefor the OBMUA seeks to impose on the Brunettis. Further, it is alleged that the OBMUA has continuously forced concessions or demanded other actions or payments by the Brunettis, while refusing to permit them to develop their Property, thereby preventing them from enjoying their right to use and develop.

The complaint in the Federal Action further alleges that the Brunettis have attempted to develop 1,384 units on their property, approvals for which have already been granted, but that the OBMUA has attempted to thwart the development by engaging in the following actions:

    (a) Attempting to force plaintiffs to pay over $13 million in improvements, including off-site facilities by requiring plaintiffs to bear excessive portion of overall municipal improvements;
    (b) Charging plaintiffs in excess of their "fair share";
    (c) Seeking to impose full cost of an on-site storage tank on the plaintiffs, "at five times the capacity needed by the Brunettis.";
    (d) Forcing plaintiffs to pay arbitrary and excessive engineering fees;
    (e) Forcing plaintiffs to attend over 100 meetings with local officials for a single application of development of 433 out of 2,300 acres;
    (f) Seeking to force plaintiffs to pay for 2,300 foot interconnect between water tanks owned by OBMUA;
    (g) Using plaintiffs' low-income development plans to satisfy state obligations while simultaneously depriving plaintiffs of development rights;
    (h) Denying the Brunettis the right to develop and enjoy economic benefit of their land;



(i) Engaging in punitive rezoning of a portion of plaintiffs' property;
(j) Retaliating against other Brunetti-owned properties;
(k) Treating other land owners differently than the Brunettis; and
(l) Treating other land owners differently than the Brunettis.

The Federal Action complaint contains ten counts, with the first nine against the OBMUA and the D&O defendants and the tenth asserted only against the D&O Defendants for: (1) Violation of Federal RICO Act; (2) Conspiracy to Violate Federal RICO Act; (3) Violation of New Jersey RICO; (4) Conspiracy to Violate New Jersey RICO; (5) Violation of Due Process – Taking of Property Interest; (6) Violation of Equal Protection; (7) New Jersey Civil Rights Act – Violation of Due Process – Taking of Property Interest; (8) New Jersey Civil Rights Act – Violation of Equal Protection; (9) Conspiracy to Violate Civil Rights (42 U.S.C. §1985); and (10) Common Law Tortious Interference with Economic Advantage.

The plaintiffs sought a judgment awarding: (1) the total sum of money paid by plaintiffs to perform the activities which were required by defendants as a condition to providing public utility services; (2) appointment of a receiver to carry out the legal obligations of the Township and the OBMUA with regard to the Property; (3) actual damages, punitive damages, treble damages; and (4) interest, fees and costs.

We note that the Federal Action was subsequently dismissed and re-filed as the 2011 State Action. The 2011 State Action Complaint is in all respects identical to the Federal Action, except that it adds an additional engineering company as a defendant.

We further note that both Actions follow the filing, on February 27, 2009, of a Second Supplemental Complaint in the action captioned, *Oaks Development Corp. et. al. v. The Planning Board of the Township of Old Bridge et. al.*, in the New Jersey Superior Court, Middlesex County, Docket No. MID-L-1902-05 ("2009 State Action"). Like the Federal Action and 2011 State Action, and as more fully set forth below, the 2009 State Action alleges that the Brunettis entered into several contractual agreements with the OBMUA requiring that the OBMUA supply water to the Property, but that the OBMUA has continually interfered with the Brunettis' ability to develop a project on the Property by demanding payments for system improvements in exchange for supplying water to the Property.

### The Policy and Coverage

OBMUA submitted the Federal Action for coverage under the Municipal Advantage Public Entity Liability Policy No. G24098369 001 ("Policy"), which was issued by WFIC to OBMUA, as the Public Entity, for the effective policy period of November 8, 2009 to November 8, 2010. Following such submission, WFIC undertook to afford a defense of the Federal Action, and WFIC appointed Howard Mankoff of Marshall, Dennehey, Warner, Coleman & Goggin ("MDWC&G") as defense counsel, all subject to reservation of all of WFIC's rights, including the right to deny coverage.

As set forth in ACE's prior letter of November 2, 2010, Section I., Insuring Agreements, confirms that, to the extent any coverage is afforded, it is with respect to Claims that are first made and reported to WFIC within the Policy Period (November 8, 2009 to November 8, 2010) for Wrongful Acts taking place prior to the end of the Policy Period.

Page 3/6



While our prior letter set forth the Policy's definition of Wrongful Act, we further note that the Policy also defines the term Interrelated Wrongful Acts at Section III.R. to mean:

> ... all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

Moreover, Policy Section IV., Exclusions, in pertinent part states:

> ... the **Insurer** shall not be liable for **Damages** or **Claims Expenses** on account of any **Claim**:
>
> Q. alleging, based upon, arising out of or attributable to:
>
> 1. any prior or pending litigation or administrative or regulatory proceeding, or any U.S. Equal Employment Opportunity Commission or similar state, local or foreign agency proceeding or investigation, filed on or before the effective date of the first policy issued and continuously renewed by the **Insurer**, or the same or substantially the same **Wrongful Act**, fact, circumstance or situation underlying or alleged therein; or
>
> 2. any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** underlying or alleged in such prior or pending proceeding, would constitute **Interrelated Wrongful Acts**.

Here, the Wrongful Acts alleged to have been committed by the Insureds in both the Federal Action and the 2011 State Action involve Interrelated Wrongful Acts with those alleged in the 2009 State Action. All three lawsuits arise out of a common nexus of allegations that the OBMUA has unfairly attempted to exact payments for improvements to the system in exchange for supplying water to the Property. Moreover, the complaints in all three lawsuits assert that OBMUA has charged the plaintiffs in excess of their "fair share," sought to impose the cost of construction of a water storage tank on plaintiffs, forced plaintiffs to pay arbitrary and unreasonable engineering fees, sought to impose costs associated with a deteriorating sewer system on plaintiffs, and as a result, generally have denied plaintiffs their rights to use and develop.

We further note that the OBMUA has previously acknowledged the unquestionable interrelatedness of the Federal Action and 2011 State Action with the 2009 State Action. On October 26, 2010, Louis Granata, counsel for the OBMUA, by letter to ACE, stated that the "[Federal Action] has been filed in the US District Court for the District of New Jersey as a continuation of the litigious nature of the plaintiff(s)." Thereafter, on November 23, 2010, the OBMUA, through defense counsel, filed a Brief in Support of its Motion to Dismiss ("Brief"). The Brief, on page 1, states that:

> Although there are different plaintiffs in the in the state and federal suits, their interests are the same, and John Brunetti is a principal in each of them. Different plaintiffs have



been named in the federal suit as [a] method of circumventing the preclusive effects of Rooker-Feldman, the entire controversy doctrine and *res judicata*.

The Brief, on page 2, further acknowledges that "[t]he plaintiffs have simply renamed in their federal complaint the claims already brought in the state court case," and proceeds to list the unmistakable commonality and interrelatedness of the allegations in both Actions. Moreover, at page 3, the Brief states that:

> In both suits, the plaintiffs generally complain that the MUA has imposed unreasonable demands, in violation of an agreement among the parties, and that these unreasonable demands are preventing the plaintiffs from completing construction of the Oaks Development . . . **The state and federal suits are based on the same facts, disputes and claims**. The fact that the plaintiffs have renamed the causes of action in the federal suit should not allow them to survive a motion to dismiss. (emphasis added).

Lastly, the Brief at page 26, reaffirms that "[t]he defendants demonstrated above that the claims asserted in the federal complaint have already been adjudicated in state court. They are based on the same facts, legal theories and arguments."

Accordingly, and as the OBMUA has plainly conceded, the allegations in all three lawsuits Actions are based upon the same "facts, circumstances, situations, events," and as such, unquestionably involve Interrelated Wrongful Acts under the Policy.

We further draw your attention to Policy Section VIII.B.2., Limits of Liability, which states:

> All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**. All **Damages** and all **Claims Expenses** resulting from a single **Claim** shall be deemed a single **Damage** and **Claims Expense** and shall be allocable to the policy in effect on the date the **Claim** is first made, regardless of whether such date is before or during the **Policy Period**.

Thus, according to Section VIII.B.2., the three lawsuits arising out of the Interrelated Wrongful Acts constitute a single Claim which is deemed first made on the date of the earliest of the three lawsuits. In this regard, the 2009 State Action added OBMUA as a defendant on February 27, 2009, prior to the November 8, 2009 inception of the Policy. Hence, the Claim involving the dispute between the Brunettis and OBMUA was not first made during the policy period. Further Exclusion IV.Q applies because this is a Claim based upon: any prior or pending litigation filed on or before the first issued policy (incepting November 8, 2009), or the same or substantially the same Wrongful Act, fact, circumstance or situation; or any other Wrongful Act whenever occurring which, together with a Wrongful Act underlying or alleged in such prior or pending proceeding, would constitute Interrelated Wrongful Acts. Accordingly, there is no coverage available for the Federal Action and the 2011 State Action.



As such, pursuant to said denial of coverage, WFIC shall withdraw from the defense of the Actions following the thirty (30) day Transitional Period and shall no longer pay Claims Expenses incurred after the end of such period. During this Transitional Period, the Insureds are free to retain their defense counsel of choice to substitute for MDWC&G, or the Insureds may continue to utilize MDWC&G on the understanding that the Insureds shall solely be responsible for Claims Expenses incurred after the Transitional Period.

### Continuing Reservation of Rights

If for any reason OBMUA disagrees with WFIC's coverage determination, ACE will, of course, consider any additional information that may favorably impact coverage.

Please note that the foregoing should not be viewed as the exclusive basis upon which WFIC's rights may rest, but only as those presently known to it. No action taken by WFIC or any of its agents should be construed as a waiver or estoppel of any of WFIC's rights to put forth a new policy provision, exclusion, condition or endorsement as a bar or limitation upon coverage. WFIC by necessity must otherwise reserve all rights including the right to seek recoupment of Claims Expenses paid for the benefit of Insureds in this matter.

If you have any questions, please call me at (678) 795-4060.

**Sincerely,**

*Sara E. Tucker*

cc: Via E-mail only

    Mr. Louis Granata
    LGranata@OBMUA.com

    Howard Mankoff, Esq.
    HBMankoff@MDWCG.com

<u>**Appendix XII-B1**</u>

| CIVIL CASE INFORMATION STATEMENT (CIS) Use for initial Law Division Civil Part pleadings (not motions) under *Rule* 4:5-1 Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed | FOR USE BY CLERK'S OFFICE ONLY PAYMENT TYPE: ☐ CK ☐ CG ☐ CA CHG/CK NO. RECEIVED #1 AMOUNT: '12 AUG 29 A 9:33 OVERPAYMENT: CIVIL OFFICE MIDDLESEX VICINAGE BATCH NUMBER: |
|---|---|

| ATTORNEY / PRO SE NAME<br>Louis E. Granata, Esq. | TELEPHONE NUMBER<br>(732) 583-3636 | COUNTY OF VENUE<br>Middlesex |
|---|---|---|
| FIRM NAME (If applicable)<br>Granata & Zaccardi | | DOCKET NUMBER (when available)<br>L 5952-12 |
| OFFICE ADDRESS<br>210 Main Street<br>P.O. Box 389<br>Matawan, NJ 07747 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND ☐ YES ■ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>Old Bridge Municipal Utilities Authority, a political subdivision of the State of New Jersey, Plaintiff | CAPTION<br>Old Bridge Municipal Utilities Authority<br>vs.<br>Westchester Fire Insurance Company, Ace Westchester Specialty |
|---|---|
| CASE TYPE NUMBER (See reverse side for listing)<br>(599) | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ■ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
| RELATED CASES PENDING?<br>☐ YES ■ No | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?<br>☐ YES ■ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (If known)<br>☐ NONE ■ UNKNOWN |

THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>☐ Yes ■ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain)<br>☐ FAMILIAL ■ BUSINESS |
|---|---|
| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☐ YES ■ No | |

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

Declaratory Judgment Insurance Policy Coverage

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ YES ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE: *[signature]*



**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for Initial pleadings (not motions) under Rule 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
- 151  NAME CHANGE
- 175  FORFEITURE
- 302  TENANCY
- 399  REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502  BOOK ACCOUNT (debt collection matters only)
- 505  OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506  PIP COVERAGE
- 510  UM or UIM CLAIM (coverage issues only)
- 511  ACTION ON NEGOTIABLE INSTRUMENT
- 512  LEMON LAW
- 801  SUMMARY ACTION
- 802  OPEN PUBLIC RECORDS ACT (summary action)
- 999  OTHER (briefly describe nature of action)

**Track II - 300 days' discovery**
- 305  CONSTRUCTION
- 509  EMPLOYMENT (other than CEPA or LAD)
- 599  CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605  PERSONAL INJURY
- 610  AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621  UM or UIM CLAIM (includes bodily injury)
- 699  TORT – OTHER

**Track III - 450 days' discovery**
- 005  CIVIL RIGHTS
- 301  CONDEMNATION
- 602  ASSAULT AND BATTERY
- 604  MEDICAL MALPRACTICE
- 606  PRODUCT LIABILITY
- 607  PROFESSIONAL MALPRACTICE
- 608  TOXIC TORT
- 609  DEFAMATION
- 616  WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617  INVERSE CONDEMNATION
- 618  LAW AGAINST DISCRIMINATION (LAD) CASES

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
- 156  ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303  MT. LAUREL
- 508  COMPLEX COMMERCIAL
- 513  COMPLEX CONSTRUCTION
- 514  INSURANCE FRAUD
- 620  FALSE CLAIMS ACT
- 701  ACTIONS IN LIEU OF PREROGATIVE WRITS

**Centrally Managed Litigation (Track IV)**
- 285  STRYKER TRIDENT HIP IMPLANTS
- 288  PRUDENTIAL TORT LITIGATION
- 289  REGLAN
- 290  POMPTON LAKES ENVIRONMENTAL LITIGATION
- 291  PELVIC MESH/GYNECARE
- 292  PELVIC MESH/BARD
- 293  DEPUY ASR HIP IMPLANT LITIGATION
- 295  ALLODERM REGENERATIVE TISSUE MATRIX
- 623  PROPECIA

**Mass Tort (Track IV)**
- 266  HORMONE REPLACEMENT THERAPY (HRT)
- 271  ACCUTANE/ISOTRETINOIN
- 274  RISPERDAL/SEROQUEL/ZYPREXA
- 278  ZOMETA/AREDIA
- 279  GADOLINIUM
- 281  BRISTOL-MYERS SQUIBB ENVIRONMENTAL
- 262  FOSAMAX
- 284  NUVARING
- 286  LEVAQUIN
- 287  YAZ/YASMIN/OCELLA
- 601  ASBESTOS

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.

Please check off each applicable category  ☐ Putative Class Action    ☐ Title 59