**NOT FOR PUBLICATION**

RECEIVED

JUL 29 2016

AT 8:30_____M
WILLIAM T. WALSH CLERK

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| OLD BRIDGE MUNICIPAL UTILITIES AUTHORITY, <br><br> Plaintiff, <br><br> v. <br><br> WESTCHESTER FIRE INSURANCE COMPANY, et al., <br><br> Defendants. | Civil Action No. 12-6232 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on separate motions for summary judgment by Plaintiff Old Bridge Municipal Utilities Authority ("OBMUA") and Defendants Westchester Fire Insurance Company and Ace Westchester Specialty Group[1] (collectively, "Defendants"). (ECF Nos. 51, 52.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court grants Defendants' motion for summary judgment and denies Plaintiff's motion for summary judgment.

---

[1] OBMUA names "ACE Westchester Specialty Group" in its filings. Defendants indicate that this is merely a trade name designation of the division granting the insurance policy at issue and not a legal entity. Regardless, Defendants' motion is on behalf of Ace Westchester Specialty Group to the extent it is deemed a party.

I.   **Background**[2]

OBMUA is an independent municipal division of the State of New Jersey. (Pl.'s Statement

of Undisputed Facts[3] ("Pl.'s SUF") ¶ 1, ECF No. 51-2.) It has seven commissioners, appointed by

the Mayor and Council, and provides water and sewer treatment to the Township of Old Bridge.

(*Id.*) On November 24, 2009, OBMUA purchased a "claims made and reported policy" from

Defendants with $2,000,000 in coverage and a policy period from November 8, 2009, to November

8, 2010 (the "Policy"). (Defs.' Statement of Undisputed Facts ("Defs.' SUF") ¶¶ 36-37, ECF No.

52-1; Pl.'s Resp. to Defs.' SUF ¶¶ 36-37, ECF No. 54-1 ("The Westchester Policy speaks for

itself."); Certification of Marianne May ("May Cert."), Ex. I ("Policy") 2, ECF No. 52-12.)

The Policy contains a limit of liability provision which states, in part:

> All Claims arising out of the same *Wrongful Act* and all *Interrelated
> Wrongful Acts* of the Insureds shall be deemed to be one Claim . . .
> deemed to be first made on the date the earliest of such Claims is
> first made, regardless of whether such date is before or during the
> Policy Period. All Damages and all Claims Expenses resulting from
> a single Claim shall be deemed a single Damage and Claims
> Expense and shall be allocable to the policy in effect on the date the
> Claim is first made, regardless or [sic] whether such date is before
> or during the Policy Period.

(Policy 12 (emphasis added).) The Policy then defines "Wrongful Acts" as either "any actual or

alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by an

Insured Person while acting in his . . . capacity as such on behalf of the public entity" or "any

---

[2] Facts are undisputed unless otherwise noted.

[3] Pursuant to Local Civil Rule 56.1, "[o]n motions for summary judgment, the movant[s] shall
furnish . . . statement[s] which set[] forth material facts as to which there does not exist a genuine
issue. . . . Each statement of material facts shall be a separate document (not part of a brief) . . . ."
L. Civ. R. 56.1.a. Here, OBMUA included the statement of undisputed material facts within its
brief in support of the motion. The Court, however, will consider it as if it was filed as a separate
statement.

actual or alleged, act, error, omission, misstatement, misleading statement, neglect of [sic] breach

of duty by the Public Entity." (*Id.* at 7.) Additionally, the Policy defines "Interrelated Wrongful

Acts" as "all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event,

transaction, cause or series of related facts, circumstances, situations, events, transactions, or

causes." (*Id.* at 6 (emphasis omitted).) Finally, the Policy includes the following pertinent

exclusions:

> [T]he Insurer shall not be liable for Damages or Claim Expenses on account of any Claim:
>
>         . . .
>
> Q.      alleging, based upon, arising out of or attributable to:
>
>         1.      any prior or pending litigation or administrative or regulatory proceeding . . . filed on or before the effective date of the first policy issued [to the Named Insurer] and continuously renewed by the Insurer, or the same or substantially the same Wrongful Act, fact, circumstance or situation underlying or alleged therein; or
>
>         2.      any other Wrongful Act whenever occurring which, together with a Wrongful Act underlying or alleged in such prior or pending proceeding, would constitute Interrelated Wrongful Acts.
>
>                 . . .
>
> S.      alleging, based upon, arising out of or attributable to any Wrongful Act prior to the inception date of the first policy issued by the Insurer or any affiliate thereof, and continuously renewed and maintained, if, on or before such date, any Insured knew or could have reasonably foreseen that such Wrongful Act could lead to a Claim.

(*Id.* at 8-10 (emphasis omitted).)

On February 17, 2009, Plaintiffs Oaks Development Corporation, Midtown Water

Company, and John J. Brunetti ("Mr. Brunetti") (collectively, "2009 Plaintiffs") amended the

3

complaint filed in the Superior Court of New Jersey (the "2009 State Action") to add OBMUA as a defendant. (Pl.'s SUF ¶ 7; Defs.' SUF ¶ 4; Certification of Louis Granata ("Granata Cert."), Ex. B ("2009 State Compl."), ECF No. 51-5.) According to the amended complaint in the 2009 State Action, OBMUA allegedly refused to honor an agreement with Mr. Brunetti to provide utility services to a development owned by the 2009 Plaintiffs, and instead attempted to both coerce the 2009 Plaintiffs to provide improvements for the benefit of the OBMUA system and to impose improper costs on the 2009 Plaintiffs. (2009 State Compl. ¶¶ 15-20, 22-28.) The 2009 Plaintiffs' amended complaint asserted multiple counts against OBMUA arising from its alleged failure to meet its contractual obligation to provide water and sewer service to the Oak Development Corporation's developments. (*See generally* 2009 State Compl.) Additionally, the 2009 State Action alleged constitutional violations by OBMUA. (*Id.* ¶¶ 82-85.) OBMUA did not report a claim under the Policy for the 2009 State Action. (Pl.'s SUF ¶ 11; Defs.' SUF ¶ 46.)

On September 9, 2010, Mr. Brunetti, Wharton Improvement Corporation, The Oaks at Glenwood, LLC, Aldercrest Development Corp., 516 Associates, LLC, and Madison Farmers, Inc. (collectively, "Federal Plaintiffs") filed a separate action against OBMUA, each of its seven commissioners, the executive director, and other consulting engineering firms employed by OBMUA (the "2009 Federal Action"). (Granata Cert., Ex. C ("2010 Federal Compl."), ECF No. 51-7.) The 2009 Federal Action asserted, among other counts, that OBMUA conspired with its co-defendants to violate the Federal and State Racketeer Influenced and Corrupt Organization Act ("RICO") by forming an enterprise to participate in a pattern of racketeering activity, namely, the extraction of goods and services from OBMUA in violation of the same sewer and water service agreements at the heart of the 2009 State Action. (2009 Federal Compl. 15.) The 2009 Federal Action also included constitutional violations, similar to the 2009 State Action. (*Compare* 2009

4

Federal Compl., Counts V, VI, and IX *with* 2009 State Compl., Counts XV-XVI.) OBMUA reported the 2009 Federal Action to Defendants, who provided a defense to OBMUA, the individual commissioners, and the executive director, resulting in dismissal of the complaint. (Pl.'s SUF ¶ 18.)

Immediately following the dismissal of the 2009 Federal Action, the Federal Plaintiffs filed another complaint ("2010 State Action") in the Superior Court of New Jersey against OBMUA, its commissioners, and the executive director for violations of the federal and state RICO statutes. (Granata Cert., Ex. E ("2010 State Compl."), ECF No. 51-10.) The 2010 State Action asserted the same wrongful acts and allegations as the 2009 Federal Action. (*Id.*; Pl.'s SUF ¶ 19.) Defendants initially defended OBMUA in the 2010 State Action but, following the resolution of the 2009 State Action in OBMUA's favor, withdrew coverage for the 2010 State Action. (Granata Cert., Ex. F ("Withdrawal Letter"), ECF No. 51-11.) In the Withdrawal Letter, Defendants, pointing to the exclusions and limitations of liability in the Policy, stated that the 2009 State Action and the 2010 State Action constituted "Interrelated Wrongful Acts" arising on the date of the initial 2009 State Action, which was before the Policy coverage period. (*Id.* at 4-5.)

## II.   **Legal Standard**

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *see Curley v. Klem*, 298 F. 3d 271, 276-77 (3d Cir. 2002) (internal quotation marks omitted). The court will not "weigh the evidence and

5

determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material* fact." *Id.* at 247-48 (emphasis in original). If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists, then the court must grant summary judgment. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). In addition, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001).

"The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468 (D.N.J. 2002). "When ruling on cross-motions for summary judgment, the court must consider the motions independently . . . and view the evidence on each motion in the light most favorable to the party opposing the motion." *Id.* at 468-69 (internal citations omitted). "That one of the cross-motions is denied does not imply that the other must be granted." *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d 785, 794 (D.N.J. 2015); *accord F.A.R. Liquidating Corp. v. Brownell*, 209 F.2d 375, 380 (3d Cir. 1954).

### III. Analysis

Both OBMUA and Defendants present the same issue in their summary judgment motions: whether the 2009 State Action, the 2009 Federal Action, and 2010 State Action constitute "Interrelated Wrongful Acts" under the Policy. (Pl.'s Moving Br. 17, ECF No. 51-2; Defs.' Moving Br. 15, ECF No. 52-2.) OBMUA argues that the 2009 State Action and the 2010 State

Action do not constitute "Interrelated Wrongful Acts," because the two actions involve factually distinct claims and different parties, despite apparent similarities in their factual allegations. (Pl.'s Moving Br. 17-18.) In opposition, Defendants argue that the three underlying actions are "Interrelated Wrongful Acts" because they are based on the same facts, circumstances, situations, events, transactions, and causes. (Defs.' Moving Br. 15; Defs.' Opp'n Br. 6, ECF No. 53.)

Under New Jersey law, courts have recognized that insurance policies are essentially "contracts of adhesion between parties who are not equally situated," *Doto v. Russo*, 140 N.J. 544, 555 (1995), requiring courts to take a "vigilant role in ensuring their conformity to public policy and . . . fairness." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 175 (1992). Thus, if the language of an insurance policy is clear and unambiguous, the court will interpret the policy's provisions as written so as to fulfill the expectations of the parties in entering into the agreement. *See, e.g.*, *Voorhees*, 128 N.J. at 175; *Nav-Its, Inc. v. Selective Ins. Co. of Am.*, 183 N.J. 110, 118 (2005) ("Generally, when interpreting an insurance policy, [the court] give[s] the policy's words their plain, ordinary meaning.") (internal quotation marks omitted). On the other hand, any ambiguous language must be construed against the insurer and in favor of the reasonable expectations of the insured, *Doto*, 140 N.J. at 556, though the court should "avoid writing a better insurance policy than the one purchased." *President v. Jenkins*, 180 N.J. 550, 562 (2004). Such ambiguity occurs when the policy's language could reasonably bear two meanings, one favoring the insured and the other the insurer. *Id.* at 563.

Within an insurance policy, "[e]xclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt v. Cardiello*, 202 N.J. 432, 441 (2010) (quoting *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997)). "[P]olicy exclusions must be narrowly construed; the burden is on the insurer

to bring the case within the exclusion." *Villa v. Short*, 195 N.J. 15, 23-24 (2008) (citation omitted). In contrast, "clauses that extend coverage are to be viewed broadly and liberally." *Id.* at 24 (citation omitted). Nevertheless, if an exclusionary clause is clear and unambiguous in its wording, the "court should not engage in a strained construction to support the imposition of liability." *Flomerfelt*, 202 N.J. at 442 (quoting *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 537 (1990)).

As Defendants argue in their motion, both state and federal courts have interpreted similar insurance policies under analogous factual circumstances as those contained in the Policy relating to "interrelated wrongful acts." *See, e.g., Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co.*, No. A-3674-07T3, 2010 WL 772299, at *2 (N.J. Super. Ct. App. Div. Mar. 8, 2010); *Regal-Pinnacle Integrations Indus., Inc. v. Phila. Indem. Ins. Co.*, No. 12-5465, 2013 WL 1737236, at *4 (D.N.J. Apr. 22, 2013); *Gladstone v. Westport Ins. Corp.*, No. 10-652, 2011 WL 5825985, at *8 (D.N.J. Nov. 16, 2011). Generally, "in order to constitute an interrelated wrongful act, the allegations in the [latter] complaint must find substantial support in the first complaint and cannot be comprised of legally distinct claims that allege different wrongs to different people." *Regal-Pinnacle*, 2013 WL 1737236, at *5 (internal quotation marks omitted); *see Fed. Ins. Co. v. Raytheon Co.*, 426 F.3d 491, 499 (1st Cir. 2005). Defendants have carried their burden, which OBMUA has not disputed, of demonstrating that the provision applies because the language of the "interrelated wrongful act" provision is clear and thus should be enforced as written. *See G-I Holdings v. Hartford Fire Ins. Co.*, No. 00-6189, 2007 WL 842009, at *8 (D.N.J. Mar. 16, 2007) (finding an insurer satisfies its burden of showing an exclusionary provision applies where the language is unambiguous) (citation omitted).

OBMUA contends that the unambiguous language of the "interrelated wrongful acts" provision must be construed to preclude a finding that actions involving different parties asserting different claims can be interrelated. (Pl.'s Moving Br. 17-18 (citing *First Trenton Indem. Co. v. River Imaging, P.A.*, No. A-6191-06T3, 2009 WL 2431649, at *4 (N.J. Super. Ct. App. Div. Aug. 11, 2009) (finding a lack of interrelatedness where the parties and claims advanced differed between actions)).) OBMUA, however, fails to indicate the crucial fact that the *First Trenton* court ruled that there was no "substantial overlap" or interrelatedness after weighing multiple factors. *First Trenton*, 2009 WL 2431649, at *6. Rather than simply ruling on the basis of the differences in parties and claims asserted, the *First Trenton* court made its decision based on a consideration of "(1) the parties involved, (2) the factual allegations, and (3) the claims advanced" in successive actions. *Id.*

In the instant case, the necessary "substantial overlap" between the 2009 State Action and the 2010 State Action appears upon examination of the parties involved and the underlying factual allegations. Both actions allege that OBMUA refused to comply with agreements made with Mr. Brunetti over the course of several years regarding the supply of utility services to his land and that he had been impeded from developing his land by OBMUA's actions. (*Compare* 2009 State Compl. ¶¶ 15-20 *with* 2010 State Compl. ¶¶ 39-41.) In addition, the 2010 State Action grows out of the same "foundation or logical basis" as the 2009 State Action, namely OBMUA's alleged refusal to honor utility provision agreements with multiple entities appearing in both actions, so as to show the necessary "substantial overlap." *Raytheon Co.*, 426 F.3d at 499.

OBMUA also argues that, as the Policy is a "claims-made" policy where "[t]he event that invokes coverage . . . is transmittal of a notice of the claim to the insurance carrier," the 2009 State Action could not be a "claim" because OBMUA had not transmitted any notice of the action to an

9

insurer. (Pl.'s Opp'n Br. 17, ECF No. 54.) Thus, OBMUA argues that since the 2009 State Action does not constitute a claim, it cannot be interrelated with the later actions. (*Id.*) OBMUA, however, fundamentally misstates the meaning of "claim" within the Policy and confuses "claims-made" with "claim reported." In actuality, the Policy defines a "claim" as, inter alia, "a civil proceeding against any Insured for monetary damages, services, or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading." (Policy 3.) The deciding factor for whether an action can be interrelated is thus whether there was a claim made against OBMUA, not whether OBMUA invoked coverage through reporting the claim. (*Id.*)

Accordingly, construing the facts in the light most favorable to OBMUA, the Court finds that OBMUA has failed to demonstrate that the 2009 State Action and the later 2010 State Action are not interrelated.[4] By the same token, the Court finds that Defendants have demonstrated that said actions do constitute "interrelated wrongful acts" under the Policy. Thus, as the 2009 State Action was instituted against OBMUA on February 27, 2009, and the Policy coverage period began on November 8, 2009, the language of the Policy precludes coverage of the 2010 State Action because it arose before the policy coverage period, at the time of the earliest "interrelated wrongful act." Additionally, the Court denies OBMUA's request for attorney's fees and costs, as its claim for coverage under the Policy is denied.

---

[4] As the resolution of this dispute is dispositive of both OBMUA's and Defendants' motions, the Court does not reach the issues of judicial estoppel and admissions argued by the parties as they are moot.

10

## IV.    **Conclusion**

For the reasons set forth above, OBMUA's motion for summary judgment is denied and Defendants' motion for summary judgment is granted. An order consistent with this Memorandum Opinion will be entered.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** July 29, 2016

11